**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN RICHARD HOUSEL, Sr.,

    Defendant-Appellant.

No. 03-3042
(D. Kan.)
(D. Ct. No. 02-CV-3089-JAR)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **PORFILIO**, Circuit Judge, and **BRORBY**, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant John Richard Housel, a federal inmate appearing *pro se*, seeks a certificate of appealability to appeal the district court's order dismissing his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. His claims center on allegations of ineffective assistance of counsel during sentencing. We deny his request for a certificate of appealability on all, but one issue, and dismiss his appeal with respect to those issues. Pursuant to 28 U.S.C. § 2253(c), we grant a certificate of appealability on the issue regarding the amount of pseudoephedrine to be applied in calculating his sentence, but nevertheless affirm the district court's decision on other grounds.

Mr. Housel was charged in a six-count indictment, including offenses relating to distribution of marijuana, conspiracy to manufacture methamphetamine, and possession of pseudoephedrine and iodine with intent to manufacture methamphetamine. In exchange for dismissal of four counts, Mr. Housel pled guilty to one count of distributing marijuana in violation of 21 U.S.C. § 841(a)(1) and one count of attempted distribution of marijuana in violation of 21 U.S.C. § 846. In order to understand Mr. Housel's ineffective assistance of counsel claims, it is necessary to explain the types and amount of contraband involved in calculating his sentence.

The specific contraband used in determining Mr. Housel's sentence included the 1,128 grams (or 1.13 kilograms) of marijuana to which he pled guilty, and the "related conduct" contraband consisting of multiple chemicals he intended to use to manufacture methamphetamine, but for which he received no conviction. According to the presentencing report, Mr. Housel was attempting to use those chemicals to manufacture methamphetamine, and therefore, the base offense level in United States Sentencing Guidelines Manual §2D1.1 applied in calculating his sentence, rather than §2D1.11. *See* U.S.S.G. §2D1.11(c) (stating if an offense involves an attempt to manufacture controlled substances, §2D1.1 is applied.) According to the presentencing report, the chemicals involved included an amount of iodine capable of producing 708 grams of methamphetamine, phosphorus capable of producing 1,043 grams of methamphetamine, and pseudoephedrine capable of producing 178 grams of methamphetamine.

Because Mr. Housel's sentence calculation involved both marijuana and chemicals used for producing methamphetamine, the probation officer who prepared the presentencing report converted a portion of the total amount of producible methamphetamine for which Mr. Housel was responsible into a total volume of marijuana. In so doing, the probation officer converted only the most abundant chemical – phosphorus – which laboratory analysis indicated could

-3-

produce 1,043 grams of methamphetamine. Once the 1,043 grams was converted into marijuana, the total conversion amount consisted of 10,430 kilograms of marijuana. When added to the 1.13 kilograms of actual marijuana he possessed, the total amount of marijuana attributable to Mr. Housel in the presentencing report totaled 10,431 kilograms of marijuana.

The presentencing report concluded that 10,431 kilograms of marijuana results in a base offense level of 36, which together with Mr. Housel's criminal history category of III, placed him in a sentencing range of 235-293 months imprisonment. *See* U.S.S.G. §2D1.1(c)(2) and ch. 5, pt. A (1998 Sentencing Table). However, the presentencing report also pointed out that the offenses and statutes to which Mr. Housel pled guilty provided a maximum of only sixty months or five years imprisonment, and that the terms of imprisonment must run consecutively if the highest statutory maximum, as in this case, is less than the guideline range. *Compare* 21 U.S.C. § 841(b)(1)(D) and U.S.S.G. §5G1.2(d). As a result, the presentencing report calculated the appropriate sentence range at 120 months. Mr. Housel's counsel initially filed several objections to the presentencing report, but withdrew them at sentencing, stating they would not affect Mr. Housel's sentence. *See United States v. Housel*, No. 00-3252, 2001 WL 557977 at *1 (10th Cir. May 24, 2001) (unpublished decision). The district

court relied on the presentencing report, and on August 23, 2000, sentenced Mr. Housel to two sixty-month terms of imprisonment to run consecutively. *Id.*

Mr. Housel filed a direct appeal challenging the calculation in the presentencing report attributing 10,431 kilograms of marijuana to him. *Id.* Because he did not raise this argument prior to sentencing, this court reviewed his claim for "plain error." *Id.* In so doing, we rejected Mr. Housel's contention his conduct should have been treated as possession of a listed chemical under U.S.S.G. §2D1.11, which would result in a lesser sentencing range, rather than an attempt to manufacture a controlled substance under §2D1.1. *Id.* at 1-2. Our ruling was based on a factual determination in the presentencing report that Mr. Housel intended to manufacture methamphetamine – conduct for which U.S.S.G. §2D1.1 is applied, and for which no plain error was shown. *Id.* In addition, this court noted Mr. Housel's appeal seemed to suggest his counsel acted ineffectively in failing to raise objections to the Presentencing Report, and directed him to file a collateral proceeding if he wished to pursue those claims. *Id.* at 2.

Mr. Housel filed the instant § 2255 motion, raising the following ineffective assistance of counsel issues: 1) counsel failed to raise the argument his sentence should have been calculated under sentencing guideline §2D1.11

instead of §2D1.1; 2) counsel failed to object to the use of phosphorus, an unlisted chemical, as the basis for the converted quantity of methamphetamine used to calculate the base offense level; and 3) counsel failed to otherwise function as an effective advocate for his client.

Following the government's response and opposition to Mr. Housel's motion, the district court issued a "Memorandum and Order Denying Motion to Vacate Sentence" (Memorandum), in which it rejected Mr. Housel's arguments in support of his ineffective assistance of counsel claims and dismissed his motion. Specifically, the district court determined that the sentencing judge properly applied U.S.S.G. §2D1.1 because the preponderance of the evidence demonstrated Mr. Housel intended to use the chemicals at issue to manufacture methamphetamine.

Next, the district court examined Mr. Housel's related claim that the sentencing court, in calculating the amount of methamphetamine attributable to him, improperly applied an unlisted chemical under U.S.S.G. §2D1.1 – *i.e.*, phosphorus, rather than one of the listed chemicals – iodine or pseudoephedrine. The government did not dispute Mr. Housel's contention that phosphorus should not have been used to calculate his sentence, but reasoned pseudoephedrine, as a

listed chemical, could be used instead. The district court agreed and explained that if pseudoephedrine had been applied, instead of phosphorus, "there is no reasonable probability that the outcome of the proceedings would have been different." In support, the district court relied on the presentencing report to point out that 388.8 grams of pseudoephedrine would result in 178 grams of methamphetamine, which when converted into marijuana and added to the 1.13 kilograms of marijuana, would place the base offense level at 32, resulting in a sentencing range far exceeding the 120-month statutory maximum term of imprisonment imposed. *See* U.S.S.G. ch. 5, pt. A (1998 Sentencing Table) (showing applicable guideline sentencing range at 151-188 months of imprisonment).

The district court also considered Mr. Housel's argument his counsel failed to argue Mr. Housel should only be responsible for the 250 grams of pseudoephedrine he agreed to purchase from agents, and not the 388.8 grams that agents delivered.[1] Mr. Housel asserted that 250 grams of pseudoephedrine would produce only 95 grams of methamphetamine, placing him in a sentencing range

---

[1] In support of his argument, Mr. Housel relied on *United States v. Perez de Dios*, in which this circuit held that, under U.S.S.G. §2D1.1, a defendant is responsible for the quantity of cocaine he agrees to buy and not the amount the government delivers. *See* 237 F.3d 1192, 1195 (10th Cir. 2001).

substantially below 120 months imprisonment. The district court determined Mr. Housel's failure to challenge the presentencing report's calculation of either iodine or pseudoephedrine at trial or on direct appeal imposed a procedural bar to this ineffective assistance of counsel claim. In so concluding, the district court noted that Mr. Housel retained different counsel at trial and on appeal, and his appellate counsel failed to raise this issue on direct appeal.

Finally, the district court determined counsel did not fail to function as an effective advocate based on his statements made at sentencing or his failure to move for a downward departure. After careful analysis, the district court concluded counsel's conduct, under the circumstances in the case, did not constitute ineffective performance under *Strickland v. Washington*, 466 U.S. 668, 694 (1984.) Accordingly, the district court dismissed Mr. Housel's § 2255 motion and denied his request for a certificate of appealability.

On appeal, Mr. Housel renews his request for a certificate of appealability, and raises the same issues asserted in his motion and rejected by the district court. Mr. Housel contends the district court erred in determining his ineffective assistance of counsel claim, on the proper amount of pseudoephedrine used in calculating his sentence, was procedurally barred. In support, Mr. Housel relies

on *Massaro v. United States*, which holds that failure to raise ineffective assistance of counsel claims on direct appeal does not bar review in a later collateral proceeding.  *See* __ U.S. ___, ___, 123 S. Ct. 1690, 1694, 1696 (2003).  Finally, he contends the district court erred in failing to grant an evidentiary hearing on the merits of his claims.  The government filed a brief opposing both Mr. Housel's appeal and request for a certificate of appealability.

An appeal may not be taken from a final order in a § 2255 proceeding without a certificate of appealability.  28 U.S.C. § 2253(c)(1).  In order for a movant to be entitled a certificate of appealability, he must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Miller-El v. Cockrell*, 537 U.S. 322, 338(2003) (quotation marks, alteration, and citation omitted).  When the district court dismisses a habeas motion "on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

These are threshold inquiries we apply to determine whether we may entertain an appeal. *See Miller-El*, 123 S. Ct. at 1039. We may perform these inquiries with "a preliminary, though not definitive," analysis of the claims raised. *Id.* at 1040. In reviewing a district court's dismissal of a motion for post conviction relief, we are free to affirm a district court decision on any grounds for which there is a sufficient record, including grounds not relied on by the district court. *See United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998). We review the denial of an evidentiary hearing on a § 2255 motion for abuse of discretion. *See United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992).

Applying these principles, we have conducted a thorough review of the pleadings, record on appeal, and the district court's decision. Under the circumstances and record presented in this case, we conclude no hearing was warranted, and therefore, the district court did not abuse its discretion by denying a hearing on any of Mr. Housel's claims. For the purpose of judicial economy, we decline to duplicate the district court's analysis on those issues on which it

addressed the merits, other than to conclude Mr. Housel clearly fails to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c). Thus, for substantially the same reasons set forth in the district court's January 6, 2003 Memorandum, we deny Mr. Housel's request for a certificate of appealability as to those issues and dismiss his appeal with respect to them.

We grant a certificate of appealability on Mr. Housel's claim of ineffective assistance of counsel concerning the amount of pseudoephedrine to be applied in calculating his sentence, which the district court determined was procedurally barred. Because we can easily resolve the issue on other grounds, we decline to remand the issue to the district court and instead directly address the merits of his claim.[2]

This circuit has held that "[w]hen a defendant fails to raise a claim on direct appeal, he is barred from pursuing that claim in a later § 2255 proceeding, absent a showing of cause and actual prejudice or a fundamental miscarriage of justice," but that "[t]his bar does not apply to an ineffective assistance of counsel

---

[2] Given our agreement with the district court on Mr. Housel's ineffective assistance of counsel claim with respect to any "downward departure," we decline to entertain his assertion that any calculation of his sentence should include a three-point reduction for acceptance of responsibility.

claim." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 537 U.S. 961 (2002). This is in accord with *Massaro v. United States*, which holds that failure to raise an ineffective assistance of counsel claim on direct appeal does not bar review in a later collateral proceeding. *See* 123 S. Ct. at 1694, 1696. Under the circumstances presented here, it is likely that jurists of reason would find it debatable whether the district court was correct in its procedural ruling with respect to Mr. House's claim. *See Slack*, 529 U.S. at 484. However, in this case, even assuming Mr. Housel's ineffective assistance of counsel claim is not barred, we can easily resolve his claim on the merits and conclude he is not entitled to relief.

In addressing Mr. Housel's claim on the merits, we must determine whether the failure of Mr. Housel's counsel to raise an objection to the amount of pseudoephedrine requested was deficient and if it was deficient, whether it prejudiced Mr. Housel. *See Strickland*, 466 U.S. at 687. To succeed, Mr. Housel must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

We begin by noting that even if Mr. Housel agreed to only purchase 250 grams of pseudoephedrine, and not a total of 388.8 grams, it is unclear how he

-12-

arrives at his calculation that 250 grams would produce only 95 grams of methamphetamine. Similarly, if 388.8 grams is used, it is unclear how he arrives at his calculation that 388.8 grams would, at the most, produce only 142 grams of methamphetamine, and not the 178 grams of methamphetamine calculated in the presentencing report.[3] In so doing, he incorrectly asserts that 142 grams converted into marijuana would result in an offense level of 30, and a sentence less than the one imposed. Instead, the accurate offense level for 142 grams of methamphetamine converted to 1,420 kilograms of marijuana is 32, resulting in a sentencing range of 151-188 – well above the 120-month sentence imposed. *See* U.S.S.G. §2D1.1(c)(4) and ch. 5, pt. A (1998 Sentencing Table). We find Mr. Housel's incorrect calculation of the base offense level, and his unsupported pseudoephedrine computations, together with his failure to provide an adequate record or references to support them, insufficient in this case to support his claim. *See United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir.), *cert.*

---

[3] On appeal, Mr. Housel provides the following equation, without any explanation of how he arrived at its components: "250 grams of [pseudo]ephedrine x .5 x .76 = 95 grams [methamphetamine] x 10kg marijuana = 950 kg." Apparently, ".5" refers to a fifty percent yield rate and ".76" to a twenty-four percent HCL salt removal rate referenced in one of his district court pleadings. But neither his appeal brief nor record references explain why these percentages are appropriate or correct. To show the possible fallacy of Mr. Housel's computations, if the above equation is applied to 388.8 grams, it results in 147.75 grams of methamphetamine, and not the 178 grams used in the presentencing report or the 142 grams Mr. Housel claims would result.

*denied*, 522 U.S. 847 (1997).

Even if the record supported Mr. Housel's claim with respect to the amount of pseudoephedrine applied, Mr. Housel's sentence would be unaffected because the methamphetamine conversion for iodine would result in the same sentence he received. Mr. Housel claims iodine is not a listed chemical under the sentencing guidelines and cannot be used to calculate his sentence. We disagree. In 1996, iodine was explicitly designated as a List II chemical in the Comprehensive Methamphetamine Control Act, Pub. L. No. 104-237, § 204, 110 Stat. 3099 (codified at 21 U.S.C. § 802(35)(I)). The current sentencing guidelines manual expressly categorizes iodine as a List II chemical under §2D1.11(e)(2). Admittedly, iodine was not expressly listed in §2D1.11 of the 1998 Sentencing Guidelines Manual – the version in effect at the time of Mr. Housel's sentencing. In such a case, "[i]f the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, [the court must] apply the most analogous offense guideline." *See* U.S.S.G. §2X5.1 (1997). In this case, the probation officer determined the analogous offense guideline for iodine was methamphetamine, resulting in conversion of the iodine into 708 grams of methamphetamine and then a conversion to 7,080 kilograms of marijuana.

Similarly, under the sentencing guidelines applicable to Mr. Housel, it is also appropriate to use 708 grams of methamphetamine to calculate his sentence, rather than the amounts of methamphetamine attributed to pseudoephedrine. This is because U.S.S.G. §2D1.11 indicates that if more than one chemical is involved, regardless of whether it is Class I or II, the court should use the one which results in the greater offense level, which in this case is 708 grams of Class II iodine rather than 250 grams of Class I pseudoephedrine. *See* U.S.S.G. §2D1.11(d) n.(A)-(D) (1998); *see also* §2D1.11(e) n.(A) (2003) (providing same result).

In this case, the base offense level for 7,080 grams of marijuana is 34, placing Mr. Housel in a sentencing guideline range of 188-235 months imprisonment. *See* U.S.S.G. §2D1.1(c)(3) and ch.5, pt. A (1998 Sentencing Table). Thus, it is logical to conclude that if Mr. Housel's counsel had successfully objected to the use of phosphorus and the amount of pseudoephedrine to calculate his sentence, the probation officer and the sentencing court would have simply applied the most abundant statutory listed chemical – iodine – to calculate his sentence, which would have resulted in an offense level higher than the offense level for the 250 grams of pseudoephedrine Mr. Housel claims is the appropriate amount. For these reasons, even if Mr. Housel's counsel had raised these objections, the sentencing range would have far

exceeded the 120-month statutory maximum imposed. Given the circumstances of this case, Mr. Housel's counsel's failure to raise an objection was not deficient, or if it was deficient, it did not prejudice Mr. Housel. *See Strickland*, 466 U.S. at 687. Accordingly, Mr. Housel has failed to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

For these reasons, Mr. Housel's request for a certificate of appealability is granted on his ineffective assistance of counsel claim concerning the use of pseudoephedrine to calculate his sentence, but for the reasons delineated here, the district court's judgment is nevertheless **AFFIRMED**. As to all other issues raised, we conclude Mr. Housel fails to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c). Thus, for substantially the same reasons set forth in the district court's January 6, 2003 Memorandum, we deny Mr. Housel's request for a certificate of appealability on those issues and **DISMISS** his appeal with respect to those issues.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-16-